**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| KIERSTEN KESEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-13784-JEK |
| | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

**KOBICK, J.**

Plaintiff Kiersten Kesel brings this putative class action against defendant Liberty Mutual Insurance Company for allegedly sending unsolicited prerecorded voice messages in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and its implementing regulations, 47 C.F.R. §§ 64.1200(a)(1)(iii) and (a)(2). Pending before the Court is Liberty Mutual's motion to strike Kesel's class allegations. That motion will be denied because Kesel has plausibly alleged the existence of a group of putative class members whose claims could be resolved on a classwide basis.

**BACKGROUND**

The following facts, which are accepted as true on a motion to strike class allegations, are drawn from the amended complaint. *See Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 60 (1st Cir. 2013).

In October 2025, Kesel received five unsolicited telemarketing calls to her cellphone number (ending in 7613) from Liberty Mutual, a Massachusetts insurance company. ECF 13, ¶¶ 5,

9-11. The messages, which were prerecorded with an artificial voice instead of a live person speaking, concerned the sale of Liberty Mutual's goods and services. *Id.* ¶¶ 10, 12-13. Kesel's cellphone number has been registered on the National Do Not Call Registry since February 6, 2020. *Id*. ¶ 14. Kesel has not provided consent for Liberty Mutual to contact her with prerecorded, automated, or robotic sales and marketing calls. *Id*. ¶ 16. She alleges that the October 2025 calls were an "invasion of privacy," causing her "inconvenience, . . . aggravation, [and] annoyance," and that Liberty Mutual maintains access to reports—showing the dates, times, target telephone numbers, and content—for all outbound calls advertising or promoting its services. *Id.* ¶¶ 15, 17.

Kesel initiated this lawsuit in December 2025 and filed an amended complaint on January 26, 2026, alleging a violation of the TCPA and its implementing regulations. *Id.* ¶¶ 28-36. She seeks to represent a class under Federal Rule of Civil Procedure 23(b)(3)[1] consisting of:

> All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) Defendant called (2) using a prerecorded voice message, (3) regarding its goods and/or services, and (4) for whom Defendant (a) claims it obtained consent in the same manner as Defendant claims it obtained prior consent to call Plaintiff, if any, or (b) does not claim it obtained prior consent.

*Id.* ¶ 18. Liberty Mutual moved to strike Kesel's class allegations. ECF 17. After receiving the opposition and reply briefs, the Court held a hearing and took the motion under advisement. ECF 19, 23, 40.

## DISCUSSION

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.

---

[1] The amended complaint seeks both money damages and injunctive relief. ECF 13, at 8. At the hearing, however, counsel for Kesel clarified that she is not pursuing her request for injunctive relief, nor is she pursuing class certification under Federal Rule of Civil Procedure 23(b)(2).

P. 12(f). In the class action context, district courts can "delete the complaint's class allegations" if "it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Manning*, 725 F.3d at 59. The First Circuit has warned, however, that "courts should exercise caution when striking class action allegations based solely on the pleadings." *Id.* Granting a motion to strike class allegations is a "drastic remedy" because it "preemptively terminate[s] the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint . . . before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (quotation marks omitted). The "dispositive question" when considering such a motion to strike is "whether the complaint pleads the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Id*.

Kesel seeks to represent a class of individuals whose rights under the TCPA have been infringed by Liberty Mutual. The TCPA provides a private right of action for people who have received "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any . . . artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(3). Under the statute's implementing regulations, it is a violation both to "initiate any telephone call . . . using an . . . artificial or prerecorded voice . . . [t]o any telephone number assigned to a . . . cellular telephone service" without prior express consent, and to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an . . . artificial or prerecorded voice" without prior express written consent. 47 C.F.R. §§ 64.1200(a)(1)(iii), (a)(2). Accepting the allegations in the amended complaint as true, Kesel has adequately identified a group of class members whose TCPA claims are susceptible to resolution on a classwide basis. Kesel claims that Liberty Mutual violated the TCPA and its regulations by

using prerecorded voice messages to make non-emergency calls to the cellphones of Kesel and putative class members without their prior express consent. ECF 13, ¶¶ 29-35. The group of putative class members consists of all persons, during the relevant period, who received prerecorded voice messages from Liberty Mutual regarding its goods or services, where Liberty Mutual either claims it obtained the same form of consent that Kesel provided, if any, or failed to obtain prior consent. *Id.* ¶ 18. At this stage in the proceedings, it is plausible from the face of the amended complaint that this group, as defined, could move forward on a classwide basis. *See Manning*, 725 F.3d at 59.

Liberty Mutual makes two counterarguments. First, Liberty Mutual contends that the proposed class is not certifiable because it lacks commonality under Rule 23(a) and fails Rule 23(b)(3)'s predominance requirement. To obtain certification, a proposed class must satisfy each element of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and demonstrate that classwide adjudication comports with one of the subsections of Rule 23(b). *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). To meet the commonality requirement of Rule 23(a)(2), the claims of the proposed class "must depend upon a common contention" that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And to meet the predominance requirement of Rule 23(b)(3), there must be a "sufficient constellation of common issues [that] binds class members together." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). Liberty Mutual argues that Kesel's proposed class lacks commonality because the class definition is too broad, and that individual issues, such as whether class members consented to receive calls and whether the calls were telemarketing calls, will predominate over common issues throughout the litigation.

Kesel argues, and the Court agrees, that the inquiry Liberty Mutual invites into whether the proposed class satisfies these elements of Rule 23 is premature. Liberty Mutual's arguments about potential distinctions between class members' consent to its calls cannot be addressed—much less resolved—at this juncture, because consent is an affirmative defense to a TCPA claim and the parties have not commenced discovery on that issue. *See Jones v. Montachusetts Reg'l Transit Auth.*, No. 22-1569, 2023 WL 9233970, at \*3 (1st Cir. Nov. 30, 2023) ("[E]xpress consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.4 (1st Cir. 2019) (same). Contrary to Liberty Mutual's argument, courts can, and do, certify TCPA classes notwithstanding disputes about individual class members' consent. *See, e.g.*, *Ward v. Liberty Mut. Ins. Co.*, No. 24-cv-10526-BEM, 2026 WL 1707142, at \*3 (D. Mass. June 12, 2026) (doing just that where "the question of consent" in the case "turn[ed] on a common form for all class members" and thereby satisfied the commonality requirement). Liberty Mutual also speculates that class members may have received different telemarketing messages that would require individualized assessment, thereby defeating predominance. But that possibility is not alluded to in the amended complaint, and the parties have not had the opportunity to conduct discovery on which prerecorded voice messages the putative class members may have received.

At this stage of the litigation, Kesel has neither had the benefit of discovery nor moved for class certification. She should have the opportunity to prove her assertions through discovery and to bring a proper motion for class certification. *See Cao v. Hungry Pot Dartmouth Inc.*, No. 24-cv-11797-JEK, 2025 WL 1745685, at \*4 (D. Mass. June 24, 2025) (citing *Manning*, 725 F.3d at 60); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 318 (D. Mass. 2020) (finding motion to strike class allegations "premature before plaintiff can develop the factual record through

discovery"). This is not one of those rare cases where it is appropriate to strike class allegations early because, for example, class members' claims are barred by jurisdictional or time limitations, or because the plaintiff proposes a "fail-safe class" in which membership is defined in terms of the legal injury. *See, e.g.*, *MSP Recovery Claims, Series LLC and Series 17-04-631 v. Plymouth Rock Assurance Corp., Inc.*, 404 F. Supp. 3d 470, 484-85 (D. Mass. 2019). The Court will, accordingly, "await the development of a factual record before determining whether the case should move forward on a representative basis." *Manning*, 725 F.3d at 59.

Second, Liberty Mutual contends that the proposed class should be limited to those who have suffered Article III injury. Article III standing "must be present at every stage of the case," and the named plaintiff must satisfy the Article III injury requirement throughout all stages of the litigation. *In re Nexium Antitrust Litig.*, 777 F.3d 9, 31-32 (1st Cir. 2015). Accepting the allegations in the amended complaint as true, Kesel, the named plaintiff, suffered injury from the unsolicited telemarketing calls, which caused her harm through "inconvenience, invasion of privacy, intrusion upon seclusion, aggravation, [and] annoyance." ECF 13, ¶ 17. Courts have widely concluded that even a single violation of the TCPA can constitute a concrete injury because it amounts to the very invasion of privacy and disruption of solitude that Congress sought to prevent. *See, e.g.*, *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017); *see also Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 (9th Cir. 2023) (allegations that plaintiff "found Defendants' texts to be 'irritating, exploitative and invasive'" were "not necessary to show injury in fact" but indicated that she "suffered the precise sort of nuisance and privacy deprivation the TCPA was enacted to address"). Liberty Mutual's further demand—that the amended complaint demonstrate now that all potential class members have suffered injury—"put[s] the cart before the

6

horse," because Rule 23 does not "require that a plaintiff demonstrate prior to class certification that each class member is injured." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 58 (1st Cir. 2018) (quotation marks omitted). It is therefore premature, at this stage in the proceedings, to entertain Liberty Mutual's request that the proposed class be narrowed.

## CONCLUSION AND ORDER

For the foregoing reasons, Liberty Mutual's motion to strike class allegations, ECF 17, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: July 8, 2026                     UNITED STATES DISTRICT JUDGE

7